**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MARY S. HEIMER,
          Appellant,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,
          Agency.

DOCKET NUMBER
DE-0432-14-0347-I-1

DATE: March 24, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Joyce E. Kitchens, Esquire, Atlanta, Georgia, for the appellant.

Michael L. Gurnee, Esquire, Denver, Colorado, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained her removal. For the reasons discussed below, we GRANT the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

appellant's petition and REVERSE the initial decision. The appellant's removal is REVERSED.

## BACKGROUND

¶2 On April 17, 2013,[2] during a progress review, the appellant, a GS-7 Voucher Examiner (Spina Bifida), was advised that her performance was unacceptable in two of her critical elements: critical element 1, Program Administration, and critical element 2, Organizational Goals. Initial Appeal File (IAF), Tab 10 at 60, Tab 34 at 26. On May 1, 2013, the appellant's supervisor issued her a Notification of Unacceptable Performance/Opportunity to Improve, affording her 90 days in which to demonstrate acceptable performance in all of her critical elements. IAF, Tab 10 at 51-52. On September 27, 2013, the appellant's second-line supervisor notified her that, during the performance improvement period (PIP), she had failed to meet the performance standards of critical elements 1 and 2 and that it was proposing to remove her from her position. IAF, Tab 7 at 44-45. The appellant responded orally and in writing to the proposal. *Id.* at 41-42, 38-39. On January 15, 2014, the agency issued her an Abeyance of Proposed Removal. *Id.* at 36. The notice stated that, although the appellant's performance did not meet the minimum requirements for her position and she had failed the assigned PIP, the agency had learned that she had since completed the Employee Assistance Program (EAP), indicating a potential for rehabilitation. Therefore, the notice stated, the agency had decided to hold the appellant's removal in abeyance for 90 days, and that, if she provided documentation showing completion of the EAP and no new instances of misconduct or performance deficiencies during the 90-day period, her removal

---

[2] The date by the appellant's supervisor's signature indicates that the progress review occurred on April 17, 2012, and because the appellant apparently refused to sign that the progress review had taken place, the supervisor indicated that fact in the area for the appellant's signature and again stated the date as April 17, 2012. IAF, Tab 10 at 60. From the record, it is clear that the progress review at issue occurred in 2013.

would be rescinded.  *Id.*  On April 22, 2014, however, the agency issued the appellant a notice stating that a decision had been made in accordance with 5 U.S.C. chapter 43 to remove her from federal employment, effective April 28, 2014, because she failed to successfully complete the PIP and because, during the 90-day period of abeyance, she failed to meet the performance standards for critical elements 1 and 2.  IAF, Tab 6 at 18-21.

¶3      On appeal, the appellant challenged the validity of her performance standards and argued that she was denied a reasonable opportunity to improve.  IAF, Tabs 1, 17.  She further alleged that, in taking the action, the agency had denied her due process or committed harmful error, discriminated against her based on her age and disability (migraines), and retaliated against her for taking leave under the Family and Medical Leave Act (FMLA).  IAF, Tab 17.

¶4      In an initial decision based on the written record,[3] the administrative judge affirmed the agency's action.  IAF, Tab 43, Initial Decision (ID) at 1, 24.  He found that the agency proved by substantial evidence that:  (1) the Office of Personnel Management approved its performance appraisal system, ID at 4-5; (2) the appellant's performance standards and critical elements were established and communicated to her, ID at 5; (3) the standards were valid, ID at 6-10; (4) the agency advised the appellant that her performance was unacceptable and warned her of her performance inadequacies, ID at 10-11; (5) the agency provided her a reasonable opportunity to demonstrate acceptable performance, ID at 11-15; and (6) her performance remained unacceptable in at least one critical element for which she was provided a reasonable opportunity to demonstrate acceptable performance.  ID at 15-16.  In addressing the appellant's affirmative defenses, the

---

[3] Although the appellant initially requested a hearing, IAF, Tab 1 at 2, she subsequently withdrew that request, IAF, Tab 27.  The administrative judge issued a close of the record notice, IAF, Tab 28, but then reopened the record twice to allow the parties to address certain specific issues, IAF, Tabs 35-36, 38-41.  Although some of the responses were untimely, the administrative judge considered them to the extent he found them responsive.  IAF, Tab 43, Initial Decision at 3.

administrative judge found that she failed to establish her claim of denial of due process/harmful error in connection with the agency's abeyance action, ID at 17-19; or her claims of age discrimination, ID at 19-21, disability discrimination, ID at 21-22, and FMLA retaliation, ID at 22-23.

¶5　　The appellant has filed a petition for review, Petition for Review (PFR) File, Tabs 1-2; the agency has responded in opposition, PFR File, Tab 8; and the appellant has replied thereto, PFR File, Tab 11

## ANALYISIS

### The removal cannot be sustained because the agency violated the appellant's due process rights.[4]

¶6　　On review, the appellant challenges the administrative judge's finding that the agency did not deny her due process or commit harmful procedural error with regard to its abeyance action.  Specifically, the appellant argues that, based on that action, the agency removed her, not only because of her performance during the PIP, but also because of her alleged performance deficiencies from January 15, 2014, through April 15, 2014, deficiencies to which she was denied the opportunity to respond.  PFR File, Tab 1 at 25-29, Tab 2 at 24-28.  In finding no violation of the appellant's due process rights, the administrative judge found that the agency's action was not an extension of the PIP, but rather a unilateral last chance, and that, as such, there was no error, no harmful error, and no violation of the appellant's due process rights which she had already been afforded.  ID at 17-19.

---

[4] To the extent that the Board is required by 5 U.S.C. § 7702(a)(1) to render a decision on the appellant's affirmative defense of discrimination based on age and disability, the petition for review fails to identify any errors in the administrative judge's thorough analysis of these issues and we affirm the initial decision in this regard.  *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings where he considered the evidence as a whole, drew appropriate references, and made reasoned conclusions); *Marchese v. Department of the Navy*, 32 M.S.P.R. 461, 464 (1987) (finding that the Board must make findings on claims of discrimination).  The initial decision, therefore, is the Board's final decision on the appellant's discrimination claims.

¶7 It is undisputed that the agency did not refer to the appellant's allegedly poor performance of 2014 in its September 27, 2013 notice of proposed removal, IAF, Tab 7 at 44-46; indeed, it could not have done so. Nevertheless, in the April 22, 2014 decision letter, the deciding official stated that it had been determined to remove the appellant, effective April 28, 2014, "for the following reasons:" her failure to successfully complete the PIP, and her failure to meet the performance standards for critical elements 1 and 2 during the period from January 15, 2014, through April 15, 2014, the period provided for in the abeyance letter. IAF, Tab 6 at 18. Because the deciding official considered information that was not included in the notice of proposed removal, we find that she relied on ex parte information in her decision to remove the appellant. *See Howard v. Department of the Air Force*, 118 M.S.P.R. 106, ¶ 4 (2012). However, such ex parte information will only violate an employee's right to due process when it introduces new and material information to the deciding official. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279 (Fed. Cir. 2011); *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999).

¶8 To determine if the deciding official's consideration of this ex parte information constituted a due process violation, we must inquire whether the information is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances. In making this determination, the Board will consider, among other factors: (1) whether the ex parte information merely introduces "cumulative information" or new information; (2) whether the employee knew of the information and had a chance to respond to it; and (3) whether the ex parte information was of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Ward*, 634 F.3d at 1279; *Stone*, 179 F.3d at 1377.

¶9 Here, we find that information as to the appellant's performance during the period of abeyance was not cumulative because, even if similar in nature to the

incidents of poor performance in the agency's notice of proposed action, it concerned performance of which the appellant was not given notice and an opportunity to respond. *See Stone*, 179 F.3d at 1376 (procedural due process guarantees are not met if the employee has notice only of certain charges or portions of the evidence relied upon by the agency). Furthermore, the U.S. Court of Appeals for the Federal Circuit has noted that ex parte information is plainly material when the deciding official has admitted that the information influenced his penalty determination. *See Ward*, 634 F.3d at 1280 n.2. Although penalty is not at issue in chapter 43 performance-based actions, *see Lisiecki v. Merit Systems Protection Board*, 769 F.2d 1558, 1566-67 (Fed. Cir. 1985), it is clear, based on the decision letter, that the deciding official in this case considered the ex parte information, IAF, Tab 6 at 18; *see Silberman v. Department of Labor*, 116 M.S.P.R. 501, ¶ 12 (2011). It is equally clear that the appellant did not know of the information and had no opportunity to respond to it.[5] In fact, the agency, in its decision letter, did not provide any specific incidents of unacceptable performance, but only stated that, during the period of abeyance, the appellant failed to meet the performance standards for critical elements 1 and 2. IAF, Tab 6 at 18. Finally, as to the undue pressure factor, the court in *Ward* clarified that it is only one of several enumerated factors and is not the ultimate inquiry in the *Stone* analysis. *See Ward*, 634 F.3d at 1280 n.2. The court added that, although ex parte information of a type likely to result in undue pressure may make it more likely that an appellant was deprived of due process, the lack of undue pressure may be less relevant to finding a constitutional violation where, as here, the deciding official admits that the ex parte information influenced his determination. *Id*.

---

[5] The appellant did not, for example, have the opportunity to explain to the deciding official why she believed that her performance between January 15, 2014, and April 15, 2014, was not deficient.

¶10     Consequently, even if, as the agency now argues, its intention in holding the appellant's removal in abeyance for 90 days was to afford her one last chance to demonstrate acceptable performance,[6] we find that the deciding official's admitted ex parte consideration of the appellant's performance during the abeyance period undermined her constitutional due process guarantee of notice and of the opportunity to respond.[7]  The agency's error cannot be excused as harmless, and the appellant's removal must be cancelled.  *See Ward*, 634 F.3d at 1280.  The agency may not remove the appellant unless and until she is afforded a new "constitutionally correct removal procedure."  *See Stone*, 179 F.3d at 1377; *see also Ward*, 634 F.3d at 1280.

¶11     Accordingly, we REVERSE the initial decision and DO NOT SUSTAIN the removal action.[8]

**ORDER**

¶12     We ORDER the agency to cancel the appellant's removal and to restore her effective April 28, 2014.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶13     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's

---

[6] To be clear, the agency decision to hold the appellant's removal in abeyance was a unilateral action and not the product of an agreement in which the appellant waived any of her rights.

[7] Given our finding of a due process violation, we need not determine whether the deciding official's consideration of the appellant's alleged performance deficiencies in 2014 also constituted harmful procedural error.  *Silberman*, 116 M.S.P.R. 501, ¶ 4 n.3.

[8] In reversing the appellant's removal, we make no findings concerning the merits of this performance-based action or the appellant's defense of retaliation for taking FMLA leave.

efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶14 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶15 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶16 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of

the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The Final Order constitutes the Board's final decision in this matter. You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no

later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:              _____
                           William D. Spencer
                           Clerk of the Board

Washington, D.C.



| | |
|---|---|
| | **DFAS CHECKLIST** |
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.